Exhibit 5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GENWORTH LIFE AND ANNUITY INSURANCE COMPANY (f/k/a FIRST COLONY LIFE INSURANCE COMPANY), | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | No. 07 CV 06400 Honorable Samuel Der-Yeghiayan Magistrate Judge Michael Mason |
| DOROTHY CIURA and LISA VANDENBERGHE (n/k/a Lisa Ortega), | ) ) ) | |
| Defendants. | ) | |
| ------------------------------------------------------- LISA VANDENBERGHE (n/k/a Lisa Ortega), | ) ) ) | |
| Cross-Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| DOROTHY CIURA, | ) ) ) | |
| Cross-Defendant | ) | |

A F F I D A V I T

Kimberly H. Hudson, being first duly sworn and under oath, swears and affirms the following:

1.    I am currently employed by Genworth Life and Annuity Insurance Company (f/k/a First Colony Life Insurance Company) ("GLAIC") as leader of the investigative team of the life claims department.

2.    Based upon my review of the file maintained by GLAIC with respect to Policy No. 2100851 issued to Steven Ciura on April 14, 1995 ("Policy"), I can attest to the following:

a.    A true and correct copy of the Policy is attached hereto as Exhibit "A".

b.    Steven Ciura was the designated Insured and Owner of the Policy.

c.    At the time the Policy was issued, the sole beneficiary named to receive the insurance

1

benefits was Lisa Vandenberghe.

      d.     The Policy contained the following provision regarding any Change of Owner and

Beneficiary:

> "The Owner may change the designation of Owner and Beneficiary during the Insured's lifetime.  Any change is subject to the consent of an irrevocable beneficiary.  Written notice of change must be filed at the home office in a form acceptable to the Company.  The new designation will then take effect as of the date the Owner signed the notice."

      e.     No written notice of change of beneficiary was received or filed at the home office, in

any form, since the inception of the Policy.

      f.     Accordingly, as the date of Mr. Ciura's death, July 23, 2003, Lisa Vandenberghe was

still named as the sole named beneficiary of the Policy.

*FURTHER AFFIANT SAYETH NAUGHT.*

Kimberly Hudson

SUBSCRIBED and SWORN
to before me on July ___, 2008.

_____  #358539
    Notary Public

My Commission Expires April 30, 2009

O:\GE740\41017 Ciura\Pleadings\Affidavit - GLAIC Rep.doc

# Genworth Life and Annuity Insurance Company

## MERGER ENDORSEMENT

In accordance with the merger of First Colony Life Insurance Company with and into Genworth Life and Annuity Insurance Company, effective January 1, 2007, and pursuant to the necessary regulatory approval, your life insurance company is now Genworth Life and Annuity Insurance Company (the "Company"). The Company's administrative address and telephone number are:

Genworth Life and Annuity Insurance Company
3100 Albert Lankford Drive
Lynchburg, VA 24501-4948
888 436.9678

No terms, conditions or benefits of your contract, policy or certificate have changed, and all rights and obligations therein are those of the Company. All servicing of your contract, policy or certificate will be done by the Company or its affiliated representatives. All references to First Colony Life Insurance Company in your policy/certificate are now changed to Genworth Life and Annuity Insurance Company.

This endorsement is part of and should be attached to your policy/certificate. All premium payments, correspondence, inquiries or complaints should be mailed to the Company at the above address.

If you have any questions, you may call or write the Company.

For Genworth Life and Annuity Insurance Company,

Pamela S. Schutz
President

Thomas E. Duffy
Secretary

MERGERENDFCL



# First Colony Life Insurance Company

Lynchburg, Virginia 24505

A Stock Company

Home Office
700 Main Street
Lynchburg, VA 24504

A Stock Company

Will pay the Beneficiary the death proceeds as set forth in Part C. Payment will be made after the following have been received at the home office:

- this Policy;
- due proof that the Insured died before the Maturity Date while this Policy was in force;
- a written claim for the death proceeds completed on a form supplied by the Company; and
- an authorization, on a form supplied by the Company, from the Insured's next of kin or other authorized person which will allow the Company to obtain and disclose information concerning the Insured.

Any payment is subject to the provisions on this and the following pages.

The Company will pay the Owner the net cash surrender value on the Maturity Date if the Insured is living on that date.

The consideration for this Policy is the application and payment of the Initial Premium on or before policy delivery.

The Owner may return this Policy within 20 days after its delivery. To return this Policy, take it or mail it to the Company or to the agent through whom it was purchased. Immediately upon delivery or mailing, this Policy will be deemed void from the beginning. Any premium paid will be returned.

Signed at the home office at 700 Main Street, Lynchburg, Virginia, on the Date of Issue.



President                    Secretary

DUPLICATE POLICY

## FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY

Adjustable Death Benefit Payable Prior to the Maturity Date
Flexible Premiums Payable During Insured's Lifetime to Maturity Date
Nonparticipating - No Dividends

|  |  |  |  |
|---|---|---|---|
| Insured | STEVEN CIURA | 2100851 | Policy Number |
| Initial Specified Amount | $50,000.00 | APRIL 14, 1995 | Policy Date |
| Initial Premium | $39.74 | APRIL 14, 1995 | Date of Issue |

Form No. 01NE-95

This Policy is a legal contract between the Owner and First Colony Life Insurance Company.

READ YOUR POLICY CAREFULLY!

## TABLE OF CONTENTS

| | Page |
|---|---|
| SCHEDULE | 3 |

**PART A. GENERAL PROVISIONS**

| | |
|---|---|
| The Contract | 5 |
| Policy Date | 5 |
| Owner and Beneficiary | 5 |
| Change of Owner and Beneficiary | 5 |
| Assignment | 5 |
| Incontestability | 5 |
| Suicide | 6 |
| Misstatement | 6 |
| Payment of Proceeds | 6 |
| Nonparticipating | 6 |
| Annual Report | 7 |

**PART B. PREMIUM PROVISIONS**

| | |
|---|---|
| Planned Periodic Premiums | 7 |
| Unscheduled Premiums | 7 |
| Minimum Premiums | 7 |
| Grace Period | 7,8 |
| Reinstatement | 8 |

**PART C. INSURANCE PROVISIONS**

| | |
|---|---|
| Death Benefit | 8,9 |
| Amount of the Death Proceeds | 10 |
| Changes in Specified Amount | 10 |

**PART D. NONFORFEITURE PROVISIONS**

| | |
|---|---|
| Account Value | 10,11 |
| Adjusted Account Value | 11 |
| Monthly Deduction | 11 |
| Cost of Insurance | 11 |
| Cost of Insurance Rate | 11,12 |
| Interest Rate | 12 |

| | Page |
|---|---|
| Continuation of Insurance | 12 |
| Cash Surrender Value | 12 |
| Surrender Charge | 12 |
| Surrender and Net Cash | |
| Surrender Value | 12 |
| Partial Withdrawal | 13 |
| Basis of Computations | 13 |

**PART E. POLICY LOANS**

| | |
|---|---|
| Cash Loan | 13 |
| Deferral | 13 |
| Loan Interest | 14 |
| Loan Repayment | 14 |

| | |
|---|---|
| PART F. PROJECTION OF BENEFITS AND VALUES | 14 |

| | |
|---|---|
| PART G. EXCHANGE PRIVILEGE | 15 |
| Table of Guaranteed Maximum Single | |
| Premium Endowment at 95 Rates | 17,18 |

**PART H. SETTLEMENT OPTIONS**

| | |
|---|---|
| General Provisions | 19 |
| Death of Payee | 19 |
| First Installment | 19 |
| Interest | 19 |
| Option 1 — Fixed Period | 19 |
| Option 2 — Life Income with | |
| Installments Certain | 19 |
| Option 3 — Interest | 19 |
| Option 4 — Fixed Installments | 19 |
| Option 5 — Single Premium Annuity | 19 |
| Other Settlement Options | 19 |
| Option 1 Table | 20 |
| Option 2 Table | 20 |

(Page 3 of 17)

 S C H E D U L E

BENEFITS AND PREMIUMS

FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE
$ 50,000 ACC. DEATH BENEFIT RIDER - MONTHLY COST OF RIDER IS $ .08 TIMES
NUMBER OF THOUSANDS OF ACC. DEATH BENEFIT

FIRST YEAR PLANNED PERIODIC PREMIUM(S) - $39.74 MONTHLY PREMIUM

MINIMUM MONTHLY PREMIUM - $39.73

EXPENSE CHARGE - 7% OF EACH PREMIUM RECEIVED

MONTHLY ADMINISTRATIVE FEE - $3.00 PER MONTH
ADMINISTRATIVE FEE FOR PARTIAL WITHDRAWAL - $25.00

INTEREST RATE

ACCOUNT VALUE   - 0.01090% A DAY, COMPOUNDED DAILY, WHICH IS EQUIVALENT TO
4% A YEAR, COMPOUNDED ANNUALLY

MORTALITY TABLE - COMMISSIONERS 1980 STANDARD ORDINARY MORTALITY TABLE, AGE
NEAREST BIRTHDAY.

MATURITY DATE  APRIL 14, 2049   THIS POLICY MAY TERMINATE PRIOR TO THIS DATE IF
-THE PLANNED PERIODIC PREMIUMS ARE PAID BUT THESE PREMIUMS PLUS CREDITED
INTEREST ARE NOT SUFFICIENT TO CONTINUE THIS POLICY TO THAT DATE, OR
-THE PREMIUMS ACTUALLY PAID PLUS CREDITED INTEREST ARE NOT SUFFICIENT TO
CONTINUE THIS POLICY TO THAT DATE.


DEATH                                           ISSUE
BENEFIT OPTION   OPTION 1                UNISEX  CATEGORY

BENEFICIARY   LISA VANDENBERGHE            STANDARD  PREMIUM
(NONSMOKER)  CLASS
EMPLOYEE PLAN

AGE NEAREST
41M  BIRTHDAY
OWNER   STEVEN CIURA

THE BENEFICIARY AND OWNER ARE SUBJECT TO CHANGE AS PROVIDED HEREIN.


INSURED   STEVEN CIURA             2,100,851  POLICY NUMBER

INITIAL
SPECIFIED AMOUNT   $50,000        APRIL 14, 1995  POLICY DATE

INITIAL PREMIUM   $39.74          APRIL 14, 1995  DATE OF ISSUE

FORM NO. ONE-95-5                    3

POL NO 2100851

S C H E D U L E  *CONTINUED*

TABLE OF GUARANTEED
MAXIMUM INSURANCE RATES

THIS TABLE SHOWS THE GUARANTEED MAXIMUM COST OF INSURANCE RATES
THE COMPANY MAY CHARGE ON THIS POLICY.  THE RATES SHOWN ARE FOR THE
INSURED'S ATTAINED AGE AND THE PREMIUM CLASS OF THIS POLICY.
ON AN ANNIVERSARY, ATTAINED AGE IS AGE NEAREST BIRTHDAY.  ON ANY
OTHER DAY, IT IS AGE NEAREST BIRTHDAY ON THE LAST ANNIVERSARY.

| ATTAINED AGE | MONTHLY RATE PER $1,000 OF NET AMOUNT AT RISK | ATTAINED AGE | MONTHLY RATE PER $1,000 OF NET AMOUNT AT RISK |
|---|---|---|---|
| 41 | .27418 | 68 | 2.80872 |
| 42 | .29662 | 69 | 3.06689 |
| 43 | .32404 | 70 | 3.35530 |
| 44 | .34898 | 71 | 3.68404 |
| 45 | .37890 | 72 | 4.06576 |
| 46 | .41132 | 73 | 4.50307 |
| 47 | .44374 | 74 | 4.99362 |
| 48 | .47866 | 75 | 5.52748 |
| 49 | .51857 | 76 | 6.09470 |
| 50 | .56098 | 77 | 6.69034 |
| 51 | .61087 | 78 | 7.30692 |
| 52 | .66577 | 79 | 7.96223 |
| 53 | .72815 | 80 | 8.68431 |
| 54 | .80052 | 81 | 9.49123 |
| 55 | .87540 | 82 | 10.41392 |
| 56 | .96028 | 83 | 11.46832 |
| 57 | 1.04518 | 84 | 12.63224 |
| 58 | 1.13758 | 85 | 13.88594 |
| 59 | 1.23749 | 86 | 15.20183 |
| 60 | 1.34741 | 87 | 16.57523 |
| 61 | 1.47236 | 88 | 18.00143 |
| 62 | 1.61233 | 89 | 19.48346 |
| 63 | 1.76985 | 90 | 21.04776 |
| 64 | 1.94743 | 91 | 22.72114 |
| 65 | 2.14259 | 92 | 24.57791 |
| 66 | 2.35035 | 93 | 26.73300 |
| 67 | 2.57322 | 94 | 29.57308 |

3A



(Page 4 of 17)

POL NO 2100851

S C H E D U L E  *CONTINUED*

SURRENDER CHARGE FOR INITIAL SPECIFIED AMOUNT

| END OF POLICY YEAR | SURRENDER CHARGE |
|---|---|
| 1 | $1400.00 |
| 2 | 1400.00 |
| 3 | 1380.00 |
| 4 | 1360.00 |
| 5 | 1340.00 |
| 6 | 1309.00 |
| 7 | 1215.50 |
| 8 | 1122.00 |
| 9 | 1028.50 |
| 10 | 935.00 |
| 11 | 841.50 |
| 12 | 748.00 |
| 13 | 654.50 |
| 14 | 561.00 |
| 15 | 467.50 |
| 16 | 374.00 |
| 17 | 280.50 |
| 18 | 187.00 |
| 19 | 93.50 |
| 20 AND THEREAFTER | .00 |

THIS SURRENDER CHARGE IS LEVEL DURING A POLICY YEAR AND EQUAL TO THE
CHARGE SHOWN FOR THE END OF THE YEAR.  THE SURRENDER CHARGE AND ANY
UNEARNED INTEREST ARE DEDUCTED FROM THE ACCOUNT VALUE IN DETERMINING
THE CASH SURRENDER VALUE.  (AFTER THE NINETEENTH POLICY YEAR, THERE
IS NO SURRENDER CHARGE APPLICABLE TO THE INITIAL SPECIFIED AMOUNT.)

3B

POL NO 2100851

S C H E D U L E  *CONTINUED*

TABLE OF NONFORFEITURE VALUES

THE VALUES SHOWN BELOW ARE BASED ON THE GUARANTEED RATE OF INTEREST
AND THE GUARANTEED MAXIMUM INSURANCE RATES SHOWN IN THE SCHEDULE.
EXCESS INTEREST AND/OR LOWER COST OF INSURANCE RATES WILL RESULT IN
VALUES GREATER THAN THOSE SHOWN.

THE CASH SURRENDER VALUES SHOWN ASSUME THAT
   - THE PLANNED PERIODIC PREMIUMS ARE PAID AS SPECIFIED BY THE
     OWNER AT THE DATE OF ISSUE
   - NO CHANGES ARE MADE IN THE SPECIFIED AMOUNT OR PLAN ORIGINALLY
     ISSUED AND
   - NO POLICY LOANS OR PARTIAL WITHDRAWALS ARE MADE.

IF PREMIUM PAYMENTS CEASE, THIS POLICY AND ALL RIDERS WILL CONTINUE IN
FORCE FOR THE TERM PERIOD SHOWN IN THE CONTINUATION OF INSURANCE VALUES
SUBJECT TO OTHER POLICY PROVISIONS.

| END OF YEAR | GUARANTEED CASH SURRENDER VALUE | GUARANTEED CONTINUATION OF INSURANCE VALUES | | |
|---|---|---|---|---|
| | | YEARS | DAYS | OR PURE ENDOWMENT |
| 1 | $    .00 | 0 | 0 | $    .00 |
| 2 | .00 | 0 | 0 | .00 |
| 3 | .00 | 0 | 0 | .00 |
| 4 | .00 | 0 | 0 | .00 |
| 5 | .00 | 0 | 0 | .00 |
| 6 | .00 | 0 | 0 | .00 |

4

## PART A. GENERAL PROVISIONS

**THE CONTRACT**

The entire contract consists of:
- this Policy;
- the original application, a copy of which was attached at issue; and
- any supplemental application for an increase in the Specified Amount.

All statements made in an application are, in the absence of fraud, deemed representations and not warranties. No statement will void this Policy or be used in defense of a claim unless it is contained in the original or a supplemental application.

Only the President, a Vice President, or the Secretary of the Company can change or waive any provision of this Policy. Any change or waiver must be made in writing.

**POLICY DATE**

Policy anniversaries, policy years, and policy months are measured from the Policy Date. The first policy year begins on the Policy Date. Subsequent policy years begin on the same date each year thereafter. A policy anniversary occurs at the beginning of each policy year after the first policy year.

The first policy month begins on the Policy Date. Subsequent policy months begin on the same day of the month as the Policy Date.

**OWNER AND BENEFICIARY**

The designations of Owner and Beneficiary in the Schedule remain in effect until changed by the Owner.

The Owner has all rights stated in this Policy. The Owner may amend this Policy during the Insured's lifetime with the Company's consent. The rights of the Owner are subject to the rights of an irrevocable beneficiary.

The interest of a beneficiary terminates if that beneficiary dies before the Insured. If no beneficiary survives at the Insured's death, payment will be made to the Owner or the Owner's estate or successors.

**CHANGE OF OWNER AND BENEFICIARY**

The Owner may change the designations of Owner and Beneficiary during the Insured's lifetime. Any change is subject to the consent of an irrevocable beneficiary. Written notice of change must be filed at the home office in a form acceptable to the Company. The new designation will then take effect as of the date the Owner signed the notice. Such a change does not affect any payment made or other action taken by the Company before the notice is received.

**ASSIGNMENT**

The Company is not responsible for the validity or effect of any assignment of this Policy. No assignment will bind the Company until it is received at the home office.

**INCONTESTABILITY**

With respect to statements made in the original application, this Policy is not contestable, except for fraud, after it has been in force during the Insured's lifetime for a period of two years from the Date of Issue.

With respect to statements made in a supplemental application, an increase in the Specified Amount is not contestable, except for fraud, after it has been in force during the Insured's lifetime for a period of two years from the effective date of such increase.

This provision does not apply to any rider that is included with the Policy.

(Continued)

Form No. ONE-95-1

PART A (Continued)

SUICIDE

If the Insured, while sane or insane, dies by suicide within two years from the Date of Issue, the death proceeds will be an amount equal to:

- the premiums paid; less
- any loan against this Policy; less
- the reduction in account value for all partial withdrawals of this Policy. The amount of the reduction is defined in the Partial Withdrawal section.

If the Insured, while sane or insane, dies by suicide:

- within two years from the effective date of an increase in the Specified Amount; but
- more than two years from the Date of Issue;

the death benefit will be calculated as if that increase had not occurred. It will be equal to the death benefit as defined in the Death Benefit section, plus the accumulated difference between:

- the monthly deductions that were deducted from the account value; and
- the monthly deductions that would have been deducted from the account value assuming the increase had not occurred.

The accumulation is made at the rates of interest credited to the account value. In this case, the death proceeds will be an amount equal to:

- the death benefit as defined above subject to any adjustment for misstatement; plus
- any premiums received at the home office after the Company has taken the monthly deduction for the policy month of death; less
- any policy loan.

These proceeds may also be adjusted as explained in the third paragraph of the Amount of the Death Proceeds section.

MISSTATEMENT

If the Insured's age or sex is misstated, the Company will adjust the proceeds. If Unisex is the Issue Category shown in the Schedule, the Company will not make an adjustment on the basis of sex.

If misstatement is discovered prior to the Insured's death, the Company will adjust

- the account value;
- the cash surrender value; and
- the minimum monthly premium.

The account value will be adjusted by the accumulated difference between:

- the monthly deductions that were deducted from the account value; and
- the monthly deductions that should have been deducted from the account value based on the correct information.

The accumulation is made at the rates of interest credited to the account value.

If misstatement is discovered at the time of the Insured's death, the death benefit will be adjusted to the amount that the most recent cost of insurance will purchase based on the correct information.

PAYMENT OF PROCEEDS

Proceeds means:

- the amount payable on the Insured's death; or
- the amount payable on surrender of this Policy; or
- the amount payable on the Maturity Date.

The proceeds will be paid from the home office. This Policy must be returned to the Company. Unless a settlement option is elected, the proceeds will be paid in one sum.

NONPARTICIPATING

This Policy does not share in any distribution of surplus. No dividends are payable.

6

ANNUAL REPORT    An annual report will be sent to the Owner. It will show since the last report:
- the premiums paid;
- the expense charges;
- the monthly deductions;
- interest credited;
- the amount of any partial withdrawals;
- the amount of any policy loan;
- the account value;
- the net cash surrender value; and
- the death benefit.

## PART B. PREMIUM PROVISIONS

Premiums are of two kinds:
- Planned Periodic Premiums; and
- Unscheduled Premiums.

Each premium after the first is payable at the home office. Payment may not be made to a Company agent except in exchange for a receipt signed by the President or Secretary of the Company and countersigned by the agent.

Each premium after the first is payable in advance:
- during the Insured's lifetime; and
- prior to the Maturity Date.

PLANNED PERIODIC    The Company will send reminder notices for these premiums or will suspend the notices
PREMIUMS    on written request from the Owner. The Company may also suspend the notices if premiums are not being paid. The notices may be sent annually, semiannually, or quarterly. These premiums may also be paid by automatic bank draft.

The Owner, with the Company's consent, may change the mode or the amount of these premiums. Written request for a change must be filed at the home office. Any change in premium amount is subject to the minimum required by Company rules.

UNSCHEDULED    Additional premiums may be paid at any time while this Policy is in force. The Com-
PREMIUMS    pany may limit the number and amount of such premiums.

MINIMUM PREMIUMS    The minimum monthly premium in effect on the Policy Date is shown in the Schedule.
A new minimum monthly premium will be determined after:
- a change in the Specified Amount of this Policy, unless the change is due to a partial withdrawal or a change in death benefit option;
- an increase or decrease in the amount of insurance of any rider attached to this Policy; and
- the addition or deletion of any rider.

The new premium will be effective from the effective date of any of the above changes and will remain in effect until the effective date of the next change. The Company will amend this Policy to include the new minimum monthly premium provided the special grace period is applicable; return of the Policy is not required.

GRACE PERIOD    Except as provided below, this Policy will enter the grace period if the net cash sur-
render value at the beginning of a policy month is insufficient to pay the monthly deduction for that month.

A special grace period provision applies:
- during the first five policy years; and
- during the period from the effective date of an increase to the fifth policy anniversary following that effective date.

(Continued)

PART B (Continued)

When the special grace period provision applies, this Policy will enter the grace period if:

- the account value at the beginning of a policy month is less than the monthly deduction for that policy month;

or if

- the net cash surrender value at the beginning of a policy month is less than the monthly deduction for that policy month; and
- the sum of the premiums paid since the measuring date, less any loan and any reduction in account value for partial withdrawals made since the measuring date, is less than the sum of the minimum monthly premiums due from the measuring date to the end of the current policy month. If the Specified Amount has not been increased, the measuring date will be the Policy Date. After the Specified Amount has been increased, the measuring date will be the effective date of the most recent increase.

A grace period of 62 days is provided under this Policy. This Policy and all riders will stay in force during a grace period. Notice of the premium required to continue this Policy in force will be mailed to the Owner and to any assignee of record at their last known addresses. If the premium is not paid within the grace period, this Policy will terminate without value on the later of:

- thirty-one days after the notice is mailed; and
- the end of the grace period.

If the Insured dies before this Policy terminates, the premium required to keep it in force to the end of the policy month of death will be deducted from the proceeds.

REINSTATEMENT

If this Policy terminates as provided in the Grace Period section, the Owner may request reinstatement of this Policy. The following must be received at the home office within five years after the date of termination and prior to the Maturity Date:

- evidence of insurability acceptable to the Company;
- payment of a premium that will keep this Policy in force for at least two policy months; and
- payment or reinstatement of any policy loan including interest at the rate(s) in effect for the applicable period.

This Policy will be reinstated at the beginning of the policy month following Company approval.

## PART C. INSURANCE PROVISIONS

DEATH BENEFIT

The death benefit depends on the option in effect at the date of death. The Schedule shows the option elected in the original application.

OPTION 1

The death benefit under this option is the greater of the following amounts

a) The Specified Amount, less any reduction in account value for partial withdrawal as explained under the Partial Withdrawal section; and

b) An amount equal to:
- the adjusted account value at the beginning of the policy month of death; less
- the cost of insurance for that month; plus
- interest on the difference from the beginning of that month to the end of that month; times
- the percentage shown in the Table below for the Insured's attained age.

8

OPTION 2

The death benefit under this option is the greater of the following amounts.

a) An amount equal to:
- the adjusted account value at the beginning of the policy month of death, less
- the cost of insurance for that month; plus
- interest on the difference from the beginning of that month to the end of that month; plus
- the Specified Amount.

b) An amount equal to:
- the adjusted account value at the beginning of the policy month of death; less
- the cost of insurance for that month; plus
- interest on the difference from the beginning of that month to the end of that month; times
- the percentage shown in the Table below for the Insured's attained age.

| Insured's Attained Age | Percentage | Insured's Attained Age | Percentage |
|---|---|---|---|
| 0-40 | 250% | 60 | 130% |
| 41 | 243% | 61 | 128% |
| 42 | 236% | 62 | 126% |
| 43 | 229% | 63 | 124% |
| 44 | 222% | 64 | 122% |
| 45 | 215% | 65 | 120% |
| 46 | 209% | 66 | 119% |
| 47 | 203% | 67 | 118% |
| 48 | 197% | 68 | 117% |
| 49 | 191% | 69 | 116% |
| 50 | 185% | 70 | 115% |
| 51 | 178% | 71 | 113% |
| 52 | 171% | 72 | 111% |
| 53 | 164% | 73 | 109% |
| 54 | 157% | 74 | 107% |
| 55 | 150% | 75-90 | 105% |
| 56 | 146% | 91 | 104% |
| 57 | 142% | 92 | 103% |
| 58 | 138% | 93 | 102% |
| 59 | 134% | 94 | 101% |

Subject to the Company's requirements and approval, the Owner may change the death benefit option. Written request for the change must be filed at the home office in a form acceptable to the Company. The change will become effective at the beginning of the policy month following Company approval.

The option may be changed if on the date the change is to become effective the death benefit is the amount provided by item a) under either Option 1 or Option 2. If the change is from Option 2 to Option 1, the specified amount after the change will be equal to the specified amount before the change plus the account value on the effective date of the change. If the change is from Option 1 to Option 2, the specified amount after the change will be equal to the specified amount before the change less the account value on the effective date of the change. These automatic adjustments to the Specified Amount due to option changes are not considered to be changes made in accordance with the Changes in Specified Amount section. If on the date the change is to become effective the death benefit is the amount provided by item b) under either Option 1 or Option 2 the option may not be changed.

(Continued)

PART C (Continued)

**AMOUNT OF THE DEATH PROCEEDS**

The proceeds payable at the death of the Insured will be:
- the death benefit as defined in the Death Benefit section subject to any adjustment for misstatement; plus
- any premiums received at the home office after the Company has taken the monthly deduction for the policy month of death; less
- any policy loan.

If death occurs as the result of suicide, the proceeds payable may be determined in accordance with the Suicide section and the following paragraph.

Any proceeds payable will be adjusted due to:
- a successful contest of this Policy; and/or
- death during the grace period.

**CHANGES IN SPECIFIED AMOUNT**

The Owner may request a change in the Specified Amount at any time after the first policy year. Written request for change must be:
- filed at the home office; and
- in a form acceptable to the Company.

A decrease in Specified Amount will be effective at the beginning of the policy month following Company approval. Other than for a partial withdrawal, a decrease is applied:
- first, to reduce the amount provided by the most recent increase;
- next, to reduce the next most recent increases successively;
- finally, to reduce the Initial Specified Amount.

A surrender charge for the decrease will be deducted from this Policy's account value on the effective date of the decrease. After the decrease, the Specified Amount cannot be less than the minimum required by Company rules.

To increase the Specified Amount, the Owner must:
- submit a supplemental application; and
- provide evidence of the insurability of the Insured acceptable to the Company. Such evidence must show that the Insured is still insurable at the Premium Class applicable on the Date of Issue.

The increase will be effective at the beginning of the policy month following Company approval.

An increase in Specified Amount requested in accordance with this section will not be made effective within 12 months after the effective date of the most recent increase.

## PART D. NONFORFEITURE PROVISIONS

**ACCOUNT VALUE**

If the Initial Premium is credited to this Policy on the Policy Date, the account value on the Policy Date is equal to:
- the Initial Premium; less
- the Expense Charge shown in the Schedule.

If the Initial Premium is credited after the Policy Date, the account value on the Policy Date is equal to the discounted difference between:
- the Initial Premium; and
- the Expense Charge shown in the Schedule.

This difference is discounted at interest from the day the Initial Premium was credited back to the Policy Date.

10

At the beginning of a policy month, other than the first policy month, the account value is equal to:

- the account value at the beginning of the preceding policy month; less
- the monthly deduction for the preceding policy month; plus
- one month's interest on the difference; plus
- the net premiums credited to this Policy since the beginning of the preceding policy month; plus
- interest on each net premium from the day it is credited to this Policy to the day on which the account value is being determined; less
- the reduction in account value for all partial withdrawal requests received since the beginning of the preceding policy month; less
- the surrender charge taken for any change which is effective at the beginning of the policy month as provided in the Surrender Charge section.

On any other day the account value is equal to:

- the account value at the beginning of the policy month; less
- the monthly deduction for the policy month; plus
- the interest on the difference from the beginning of the policy month to the day on which the account value is being determined; plus
- the net premiums credited to this Policy since the beginning of the policy month; plus
- interest on each net premium from the day it is credited to this Policy to the day on which the account value is being determined.

The net premium referred to above is equal to:

- the premium paid; less
- the Expense Charge shown in the Schedule.

**ADJUSTED ACCOUNT VALUE**

The adjusted account value at the beginning of a policy month is equal to:

- the account value at the beginning of the policy month; less
- the cost of riders for that policy month; less
- the Monthly Administrative Fee shown in the Schedule.

**MONTHLY DEDUCTION**

The monthly deduction for a policy month includes:

- the cost of insurance for the policy month;
- the cost of riders for the policy month; and
- the Monthly Administrative Fee shown in the Schedule.

**COST OF INSURANCE**

The cost of insurance for a policy month is equal to:

- the cost of insurance rate; times
- the net amount at risk for that policy month.

The net amount at risk for a policy month is equal to:

- the death benefit for that policy month; less
- the adjusted account value at the beginning of the policy month accumulated with interest to the end of the month.

**COST OF INSURANCE RATE**

The rates for this plan are determined by the Company based on its expectation of future:

- mortality;
- interest;
- expenses; and
- persistency.

A change in rate will be due to a change in the Company's expectation in one or more of these factors. The Company's past experience will not be a factor in such change. Any change in rate will apply to all insureds with the same:

- issue age;
- sex (inapplicable if Unisex is the Issue Category shown in the Schedule);
- number of years of insurance in force;
- net amount at risk; and/or
- premium class.

(Continued)

11

PART D (Continued)

The maximum rates which the Company may charge for this Policy are shown in the Schedule.

**INTEREST RATE**

The guaranteed interest rate used in the calculation of the account value is shown in the Schedule. Interest in excess of the guaranteed rate may be applied as determined by the Company.

**CONTINUATION OF INSURANCE**

This Policy and all riders will continue in force until the premiums paid plus credited interest are insufficient to keep them in force. This Policy and all riders will then terminate as provided in the Grace Period section.

In no case will this Policy continue beyond the Maturity Date nor will a rider continue beyond its termination date.

**CASH SURRENDER VALUE**

The cash surrender value is equal to:
- the account value; less
- any unearned interest; less
- any applicable surrender charges.

Unearned interest is the excess interest credited to the account value in the 12 months prior to the date the cash surrender value is being determined. In determining the cash surrender value after the fourteenth policy year, any excess interest credited to the account value will be considered earned as of the date it is credited.

**SURRENDER CHARGE**

A charge will be taken upon surrender of this Policy. The surrender charge applicable for the Initial Specified Amount is shown in the Schedule.

A surrender charge will also be taken when the Specified Amount of this Policy is decreased at the Owner's request. The account value will be reduced by the amount of this charge as of the effective date of the change. The account value will not, however, be reduced below zero. The Company will amend this Policy to show the amount of the charge taken. A surrender charge will not be taken for a decrease in Specified Amount due to a partial withdrawal or a change in death benefit option.

The surrender charge will be adjusted following an increase or a decrease in Specified Amount, unless the change is due to a partial withdrawal or a change in the death benefit option. The Policy will be amended to include the new surrender charge. The new charge will be effective as of the effective date of the change.

**SURRENDER AND NET CASH SURRENDER VALUE**

The Owner may surrender this Policy by:
- returning this Policy to the home office; and
- filing written request in a form acceptable to the Company.

The date of surrender will be the beginning of the policy month following receipt of such request provided:
- the Insured is then living; and
- this Policy has not matured.

The amount which will be paid is the net cash surrender value. It is equal to:
- the cash surrender value on the date of surrender; less
- any loan against this Policy.

The payment of the net cash surrender value may be deferred up to six months after request is received at the home office.

If surrender is requested within 30 days after an anniversary, the net cash surrender value will not be less than:
- the net cash surrender value on the anniversary; less
- any policy loan made since the anniversary; less
- the reduction in account value for any partial withdrawal made since the anniversary.

This Policy will terminate as of the date of surrender.

12

PARTIAL
WITHDRAWAL

The Owner may make a partial withdrawal. Written request in a form acceptable to the Company must be filed at the home office. The date of the partial withdrawal will be the beginning of the policy month following receipt of such request provided

- the Insured is then living; and
- this Policy has not matured.

The amount paid to the Owner may not exceed:

- the net cash surrender value on the date of partial withdrawal; less
- two hundred, seventy-five dollars.

Payment to the Owner may be deferred up to six months after request is received at the home office. A partial withdrawal to pay premiums to the Company will not, however, be deferred.

The account value is reduced on the date of partial withdrawal by an amount referred to as the reduction in account value. The amount of this reduction is equal to:

- the amount paid to the Owner; plus
- the Administrative Fee for Partial Withdrawal shown in the Schedule.

As a result, the death benefit is also reduced by the amount of this reduction. After the reduction, the death benefit cannot be less than the minimum required by Company rules.

If the death benefit is the amount provided by item a) under Option 1 of the Death Benefit section, the Specified Amount is decreased on the date of partial withdrawal by the amount of the reduction in account value. If the death benefit is provided by item b) under Option 1, the Specified Amount will be adjusted by an amount not to exceed the amount of the reduction in account value.

A decrease in Specified Amount due to a partial withdrawal is applied:

- first, to reduce the Initial Specified Amount;
- next, to reduce all increases, starting with the first, in the order of such increases;
- finally, to reduce the amount provided by the most recent increase.

BASIS OF
COMPUTATIONS

The mortality table and rates of interest used are shown in the Schedule.

Values are not less than the minimum required on the Policy Date by the state in which this Policy was issued.

A detailed statement of the method of computing values and reserves has been filed with the insurance department of the state in which this Policy was issued.

## PART E. POLICY LOANS

CASH LOAN

The Company will make a loan upon the sole security and assignment of this Policy. The Owner may obtain the loan at any time while this Policy is in force.

The loan value is the projected cash surrender value as of the next policy anniversary. The amount advanced may not exceed:

- the loan value; less
- the amount of any existing loan; less
- loan interest to the end of the policy year.

The amount payable at the Insured's death will be reduced by the amount of any policy loan.

DEFERRAL

The Company may defer making a policy loan up to six months after written request is received at the home office. A loan for payment of premiums to the Company will not, however, be deferred.

(Continued)

13

PART E (Continued)

**LOAN INTEREST**

The Company will determine the loan interest rate for this plan on January 1 of each year. The rate will become effective for this Policy as of the policy anniversary on or following January 1 of each year and will remain in effect until the next policy anniversary. It will apply to both new and existing loans. The maximum effective loan interest rate determined as of January 1 of each year will not exceed the greater of:

- the Published Monthly Average for October of the preceding calendar year; and
- the annual Account Value interest rate shown in the Schedule plus 1%.

Published Monthly Average means:

- Moody's Corporate Bond Yield Average - Monthly Average Corporates as published by Moody's Investors Services, Inc. or its successor(s); or
- a substantially similar average set by regulation issued by the department of insurance of the state in which this Policy was issued if Moody's Corporate Bond Yield Average - Monthly Average Corporates is no longer published.

On January 1, the Company may raise its maximum effective loan interest rate if the maximum as determined above would be at least 1/2% more per year than such rate. The Company will lower as of January 1 its maximum effective loan interest rate if the maximum as determined above would be at least 1/2% less per year than such rate. As specified above, any change in rate will be effective on the policy anniversary.

In no case will the loan interest rate exceed the maximum loan interest rate allowed by law in the state in which this Policy was issued.

Notice of the initial loan interest rate will be sent to the Owner when a policy loan is made. Notice of the interest rate in effect for each policy year will be sent in the annual report.

Interest on a loan is payable annually in advance on each policy anniversary. Interest not paid when due is added to the loan and bears interest at the loan interest rate(s).

**LOAN REPAYMENT**

All or any part of a policy loan may be repaid while this Policy is in force during the Insured's lifetime. A loan which is in existence at the end of the grace period may not, however, be repaid until this Policy is reinstated.

Every payment to the Company will be considered a premium payment unless clearly marked for loan repayment.

When the total loan, including interest, exceeds the cash surrender value, this Policy will terminate as provided in the Grace Period section. Notice of termination will be mailed to the Owner and to any assignee of record. Termination will be effective 31 days after the notice is mailed.

# PART F. PROJECTION OF BENEFITS AND VALUES

The Owner may request a projection of illustrative future death benefits and cash surrender values. The request must be in writing to the home office. A fee may be charged for this service.

The illustration will be based on:

- assumptions specified by the Owner as to Specified Amount(s), death benefit option(s), and premium payment(s); and
- other necessary assumptions specified by the Company and/or the Owner.

## PART G. EXCHANGE PRIVILEGE

The Owner may surrender this Policy and apply the net cash surrender value to purchase a new policy on the life of the Insured. The new policy will be a Single Premium Endowment at 95 plan. To exchange this Policy, the Owner must:
- return this Policy to the home office; and
- file written request in a form acceptable to the Company.

The date of the exchange will be the beginning of the policy month following receipt of such request provided:
- the Insured is then living; and
- this Policy has not matured.

The policy date of the new policy will be the date of exchange. The maximum amount of insurance which may be purchased without evidence of insurability is equal to:
- the amount of the death benefit under this Policy on the date of exchange; plus
- the amount applied as the single premium for the new policy; less
- the account value of this Policy on the date of exchange.

A larger amount of insurance may be purchased with evidence of insurability. In no case, however, may the amount applied as the single premium exceed the net cash surrender value of this Policy.

The single premium for the new policy will be based on the rate then in effect for:
- the amount of insurance of the new policy;
- the Insured's sex and age nearest birthday on the date of exchange (the Insured's sex will not be used if Unisex is the Issue Category shown in the Schedule); and
- the premium class. The new policy will be in the same class as this Policy on its Date of Issue.

The maximum single premium that may be charged is shown on pages 17 and 18. If Unisex is the Issue Category shown in the Schedule, the maximum single premium that may be charged is shown in the Male and Unisex Table on page 17.

Riders may be included in the new policy if evidence of insurability is provided

## TABLE OF GUARANTEED MAXIMUM
## SINGLE PREMIUM ENDOWMENT AT 95 RATES

### MALE AND UNISEX

| Age at Issue | Single Premium Per $1,000 of Amount of Insurance | Age at Issue | Single Premium Per $1,000 of Amount of Insurance | Age at Issue | Single Premium Per $1,000 of Amount of Insurance |
|---|---|---|---|---|---|
| 0 | 85.30 | 35 | 246.95 | 70 | 659.73 |
| 1 | 84.89 | 36 | 255.25 | 71 | 673.21 |
| 2 | 87.31 | 37 | 263.82 | 72 | 686.57 |
| 3 | 89.90 | 38 | 272.62 | 73 | 699.72 |
| 4 | 92.61 | 39 | 281.67 | 74 | 712.58 |
| 5 | 95.45 | 40 | 290.96 | 75 | 725.09 |
| 6 | 98.46 | 41 | 300.49 | 76 | 737.22 |
| 7 | 101.62 | 42 | 310.24 | 77 | 749.01 |
| 8 | 104.97 | 43 | 320.23 | 78 | 760.50 |
| 9 | 108.49 | 44 | 330.45 | 79 | 771.77 |
| 10 | 112.18 | 45 | 340.90 | 80 | 782.88 |
| 11 | 116.02 | 46 | 351.59 | 81 | 793.81 |
| 12 | 119.98 | 47 | 362.52 | 82 | 804.56 |
| 13 | 124.04 | 48 | 373.69 | 83 | 815.06 |
| 14 | 128.14 | 49 | 385.11 | 84 | 825.25 |
| 15 | 132.26 | 50 | 396.76 | 85 | 835.14 |
| 16 | 136.41 | 51 | 408.67 | 86 | 844.81 |
| 17 | 140.56 | 52 | 420.79 | 87 | 854.42 |
| 18 | 144.76 | 53 | 433.10 | 88 | 864.22 |
| 19 | 149.03 | 54 | 445.60 | 89 | 874.55 |
| 20 | 153.42 | 55 | 458.25 | 90 | 885.87 |
| 21 | 157.96 | 56 | 471.04 | 91 | 898.88 |
| 22 | 162.68 | 57 | 483.97 | 92 | 914.60 |
| 23 | 167.61 | 58 | 497.04 | 93 | 934.61 |
| 24 | 172.78 | 59 | 510.27 | 94 | 961.53 |
| 25 | 178.19 | 60 | 523.64 | | |
| 26 | 183.88 | 61 | 537.15 | | |
| 27 | 189.83 | 62 | 550.75 | | |
| 28 | 196.05 | 63 | 564.43 | | |
| 29 | 202.54 | 64 | 578.12 | | |
| 30 | 209.28 | 65 | 591.80 | | |
| 31 | 216.30 | 66 | 605.44 | | |
| 32 | 223.57 | 67 | 619.05 | | |
| 33 | 231.11 | 68 | 632.63 | | |
| 34 | 238.90 | 69 | 646.19 | | |

The rates shown are for a standard premium class. For a rated premium class, the rates shown will be adjusted as determined by the Company.

These rates are based on the 1980 Commissioners Standard Ordinary Mortality Table, age nearest birthday. Interest is 4% a year, compounded annually.

## TABLE OF GUARANTEED MAXIMUM
## SINGLE PREMIUM ENDOWMENT AT 95 RATES

### FEMALE

| Age at Issue | Single Premium Per $1,000 of Amount of Insurance | Age at Issue | Single Premium Per $1,000 of Amount of Insurance | Age at Issue | Single Premium Per $1,000 of Amount of Insurance |
|---|---|---|---|---|---|
| 0 | 70.34 | 35 | 211.26 | 70 | 596.99 |
| 1 | 70.47 | 36 | 218.42 | 71 | 612.30 |
| 2 | 72.48 | 37 | 225.79 | 72 | 627.77 |
| 3 | 74.63 | 38 | 233.38 | 73 | 643.30 |
| 4 | 76.88 | 39 | 241.16 | 74 | 658.75 |
| 5 | 79.25 | 40 | 249.14 | 75 | 674.05 |
| 6 | 81.72 | 41 | 257.31 | 76 | 689.12 |
| 7 | 84.32 | 42 | 265.67 | 77 | 703.96 |
| 8 | 87.04 | 43 | 274.21 | 78 | 718.60 |
| 9 | 89.88 | 44 | 282.96 | 79 | 733.08 |
| 10 | 92.85 | 45 | 291.93 | 80 | 747.42 |
| 11 | 95.95 | 46 | 301.12 | 81 | 761.58 |
| 12 | 99.17 | 47 | 310.54 | 82 | 775.52 |
| 13 | 102.49 | 48 | 320.21 | 83 | 789.17 |
| 14 | 105.92 | 49 | 330.12 | 84 | 802.46 |
| 15 | 109.44 | 50 | 340.27 | 85 | 815.39 |
| 16 | 113.07 | 51 | 350.66 | 86 | 828.05 |
| 17 | 116.80 | 52 | 361.30 | 87 | 840.56 |
| 18 | 120.63 | 53 | 372.17 | 88 | 853.13 |
| 19 | 124.60 | 54 | 383.27 | 89 | 866.07 |
| 20 | 128.70 | 55 | 394.59 | 90 | 879.81 |
| 21 | 132.93 | 56 | 406.17 | 91 | 894.97 |
| 22 | 137.33 | 57 | 418.01 | 92 | 912.49 |
| 23 | 141.89 | 58 | 430.15 | 93 | 933.85 |
| 24 | 146.61 | 59 | 442.64 | 94 | 961.53 |
| 25 | 151.51 | 60 | 455.48 | | |
| 26 | 156.59 | 61 | 468.67 | | |
| 27 | 161.86 | 62 | 482.17 | | |
| 28 | 167.32 | 63 | 495.93 | | |
| 29 | 172.97 | 64 | 509.88 | | |
| 30 | 178.82 | 65 | 523.96 | | |
| 31 | 184.87 | 66 | 538.18 | | |
| 32 | 191.14 | 67 | 552.55 | | |
| 33 | 197.62 | 68 | 567.11 | | |
| 34 | 204.33 | 69 | 581.92 | | |

The rates shown are for a standard premium class. For a rated premium class, the rates shown will be adjusted as determined by the Company.

These rates are based on the 1980 Commissioners Standard Ordinary Mortality Table, age nearest birthday. Interest is 4% a year, compounded annually.

## PART H. SETTLEMENT OPTIONS

**GENERAL PROVISIONS**

Policy proceeds may be paid in a single sum or left with the Company for payment under one or more of the following settlement options. The amount applied under an option must be at least $2,000. The amount of each payment under an option must be at least $50.

The Owner, with the consent of any irrevocable beneficiary, may elect or revoke a settlement option at any time before the proceeds are payable. If no settlement option election is then in effect, the payee may make an election. Written notice of election or revocation must be filed at the home office in a form acceptable to the Company. The notice will then take effect as of the date the Owner or payee signed the notice. An election does not affect any payment made or other action taken by the Company before the notice is received. A payee that is not a natural person may elect a settlement option only with the Company's consent.

An assignee cannot elect any settlement option. Change of owner or beneficiary automatically revokes any election in effect.

**DEATH OF PAYEE**

Unless otherwise specified, at the death of the last payee a final payment will be made to the payee's estate. For Options 1 and 2, the final payment will be the commuted value of the remaining unpaid installments certain. Such value will be computed based on the rate of interest used in the calculation of the payments. For Options 3 and 4, the final payment will be the unpaid proceeds with any unpaid interest to the date of death of the payee.

**FIRST INSTALLMENT**

The first installment under Options 1, 2, and 4 is payable on the effective date of the option. The effective date is:
- the date of surrender of this Policy; or
- the date of the Insured's death; or
- the Maturity Date; or
- any later date agreeable with the Company.

**INTEREST**

The guaranteed interest rate for Options 1, 2, 3, and 4 is 2½% a year, compounded annually. Excess interest may be declared annually by the Company.

**OPTION 1 FIXED PERIOD**

Proceeds will be paid for a fixed period. The amount of the payments is determined from the Option 1 Table below.

**OPTION 2 LIFE INCOME WITH INSTALLMENTS CERTAIN**

Proceeds will be paid in equal installments throughout the certain period. After the certain period, payments will continue to be made throughout the payee's lifetime. The amount and certain period of the payments are determined from the Option 2 Table below. At some ages the same amount is payable for different periods certain. In such case the Company will assume that the longest period was chosen. Satisfactory proof of the payee's age is required. The Company may require evidence that the payee is living on the due date of each payment.

**OPTION 3 INTEREST**

Interest on the proceeds will be paid in the manner agreed upon when the option is elected.

**OPTION 4 FIXED INSTALLMENTS**

Proceeds will be paid in fixed installments at regular intervals until proceeds, together with interest on the unpaid balance, are exhausted.

**OPTION 5 SINGLE PREMIUM ANNUITY**

Proceeds will be used to purchase any single premium annuity the Company offers at the time proceeds are applied. The annuity payments will be 102% of the payments otherwise purchased by the single premium.

**OTHER SETTLEMENT OPTIONS**

Proceeds may be applied in any other mutually agreeable manner.

(Continued)

19

## PART H (Continued)

### OPTION 1 TABLE — Fixed Period Installments
Installments for fixed number of years are shown for each $1,000 of proceeds.

| Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Years | | | | | Years | | | | | Years | | | | |
| 1 | $1003.09 | $503.09 | $252.32 | $84.28 | 6 | $177.12 | $89.11 | $44.69 | $14.93 | 15 | $76.80 | $39.66 | $19.88 | $6.64 |
| 2 | 512.17 | 254.65 | 127.72 | 42.66 | 7 | 153.65 | 77.30 | 38.77 | 12.95 | 20 | 62.58 | 31.48 | 15.79 | 5.73 |
| 3 | 341.60 | 171.85 | 86.19 | 28.79 | 8 | 136.07 | 68.45 | 34.33 | 11.47 | 25 | 53.95 | 26.66 | 13.36 | 4.46 |
| 4 | 259.33 | 130.47 | 65.44 | 21.86 | 9 | 122.40 | 61.58 | 30.88 | 10.32 | 30 | 46.61 | 23.45 | 11.76 | 3.93 |
| 5 | 210.00 | 105.65 | 52.99 | 17.70 | 10 | 111.47 | 56.08 | 28.13 | 9.38 | | | | | |

### OPTION 2 TABLE - Life Income with Installments Certain
Monthly installments are shown for each $1,000 of proceeds. Age is age nearest birthday when the first installment is payable. When Unisex is the Issue Category, find the payee's age in the Female column to determine the amount and certain period of payments.

| Age | | No. of Months Certain | | | | Age | | No. of Months Certain | | | | Age | | No. of Months Certain | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Male | Female | 60 | 120 | 180 | 240 | Male | Female | 60 | 120 | 180 | 240 | Male | Female | 60 | 120 | 180 | 240 |
| | 12* | $2.63 | $2.63 | $2.62 | $2.61 | 35 | 40 | $3.40 | $3.39 | $3.36 | $3.33 | 63 | 68 | $6.04 | $5.74 | $5.30 | $4.80 |
| | 13 | 2.64 | 2.64 | 2.63 | 2.63 | 36 | 41 | 3.43 | 3.43 | 3.41 | 3.37 | 64 | 69 | 6.22 | 5.87 | 5.39 | 4.85 |
| 10* | 14 | 2.66 | 2.66 | 2.65 | 2.63 | 37 | 42 | 3.50 | 3.48 | 3.45 | 3.41 | 65 | 70 | 6.40 | 6.01 | 5.48 | 4.90 |
| 11 | 15 | 2.67 | 2.67 | 2.66 | 2.66 | 38 | 43 | 3.55 | 3.53 | 3.50 | 3.45 | 66 | 71 | 6.59 | 6.16 | 5.56 | 4.95 |
| 12 | 16 | 2.69 | 2.69 | 2.68 | 2.68 | 39 | 44 | 3.61 | 3.59 | 3.55 | 3.50 | 67 | 72 | 6.79 | 6.30 | 5.65 | 4.98 |
| 13 | 17 | 2.71 | 2.71 | 2.70 | 2.70 | 40 | 45 | 3.66 | 3.64 | 3.60 | 3.54 | 68 | 73 | 7.00 | 6.43 | 5.73 | 5.02 |
| 14 | 18 | 2.73 | 2.73 | 2.72 | 2.71 | 41 | 46 | 3.72 | 3.70 | 3.65 | 3.59 | 69 | 74 | 7.23 | 6.60 | 5.82 | 5.05 |
| 15 | 19 | 2.74 | 2.74 | 2.74 | 2.73 | 42 | 47 | 3.78 | 3.76 | 3.71 | 3.64 | 70 | 75 | 7.46 | 6.76 | 5.90 | 5.09 |
| 16 | 20 | 2.76 | 2.76 | 2.76 | 2.75 | 43 | 48 | 3.85 | 3.82 | 3.77 | 3.69 | 71 | 76 | 7.70 | 6.91 | 5.97 | 5.12 |
| 17 | 21 | 2.78 | 2.78 | 2.78 | 2.77 | 44 | 49 | 3.92 | 3.88 | 3.82 | 3.74 | 72 | 77 | 7.95 | 7.07 | 6.05 | 5.14 |
| 18 | 22 | 2.81 | 2.81 | 2.80 | 2.79 | 45 | 50 | 3.99 | 3.95 | 3.88 | 3.79 | 73 | 78 | 8.22 | 7.23 | 6.12 | 5.17 |
| 19 | 23 | 2.83 | 2.83 | 2.82 | 2.81 | 46 | 51 | 4.06 | 4.02 | 3.95 | 3.84 | 74 | 79 | 8.50 | 7.38 | 6.18 | 5.19 |
| 20 | 24 | 2.85 | 2.85 | 2.84 | 2.84 | 47 | 52 | 4.14 | 4.09 | 4.01 | 3.90 | 75* | 80 | 8.78 | 7.54 | 6.24 | 5.20 |
| 21 | 25 | 2.88 | 2.88 | 2.87 | 2.86 | 48 | 53 | 4.22 | 4.17 | 4.08 | 3.95 | 76 | 81 | 9.08 | 7.69 | 6.30 | 5.22 |
| 22 | 26 | 2.90 | 2.90 | 2.89 | 2.88 | 49 | 54 | 4.31 | 4.25 | 4.15 | 4.01 | 77 | 82 | 9.40 | 7.84 | 6.35 | 5.23 |
| 23 | 27 | 2.93 | 2.93 | 2.92 | 2.91 | 50 | 55 | 4.40 | 4.33 | 4.22 | 4.07 | 78 | 83 | 9.72 | 7.98 | 6.39 | 5.24 |
| 24 | 28 | 2.95 | 2.95 | 2.94 | 2.93 | 51 | 56 | 4.49 | 4.42 | 4.29 | 4.12 | 79 | 84 | 10.06 | 8.13 | 6.43 | 5.25 |
| 25 | 29 | 2.98 | 2.98 | 2.97 | 2.96 | 52 | 57 | 4.59 | 4.50 | 4.37 | 4.18 | 80 and over | 85 and over | 10.39 | 8.26 | 6.47 | 5.26 |
| 26 | 30 | 3.01 | 3.01 | 3.00 | 2.99 | 53 | 58 | 4.69 | 4.60 | 4.44 | 4.24 | | | | | | |
| 27 | 31 | 3.04 | 3.04 | 3.03 | 3.02 | 54 | 59 | 4.80 | 4.69 | 4.52 | 4.30 | | | | | | |
| 28 | 32 | 3.08 | 3.08 | 3.07 | 3.05 | 55 | 60 | 4.91 | 4.79 | 4.60 | 4.36 | | | | | | |
| 29 | 33 | 3.11 | 3.11 | 3.09 | 3.08 | 56 | 61 | 5.02 | 4.90 | 4.69 | 4.41 | | | | | | |
| 30 | 34 | 3.14 | 3.14 | 3.12 | 3.11 | 57 | 62 | 5.15 | 5.01 | 4.77 | 4.47 | | | | | | |
| 31 | 35 | 3.18 | 3.18 | 3.16 | 3.15 | 58 | 63 | 5.28 | 5.12 | 4.86 | 4.53 | | | | | | |
| 32 | 36 | 3.22 | 3.22 | 3.20 | 3.18 | 59 | 64 | 5.42 | 5.23 | 4.94 | 4.59 | | | | | | |
| 33 | 37 | 3.27 | 3.26 | 3.24 | 3.22 | 60 | 65 | 5.56 | 5.35 | 5.03 | 4.64 | | | | | | |
| 34 | 38 | 3.31 | 3.30 | 3.28 | 3.25 | 61 | 66 | 5.72 | 5.48 | 5.12 | 4.70 | | | | | | |
| 34 | 39 | 3.36 | 3.34 | 3.32 | 3.29 | 62 | 67 | 5.87 | 5.61 | 5.21 | 4.75 | | | | | | |

* Also applies to younger ages

# FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY

Adjustable Death Benefit Payable Prior to the Maturity Date
Flexible Premiums Payable During Insured's Lifetime to Maturity Date
Nonparticipating - No Dividends

## FIRST COLONY LIFE INSURANCE COMPANY
### Lynchburg, Virginia


## ENDORSEMENT


This Endorsement is intended to clarify the Premium Class shown on Schedule Page 3:

"In determining the Premium Class for this Policy, the Insured has been classified as either a 'nonsmoker' or a 'smoker' based on statements made regarding the use of tobacco. The Insured may be classified as a 'smoker' for the use of any form of tobacco. If the Insured has been classified as a 'nonsmoker,' the Premium Class of this Policy will indicate 'Nonsmoker'; otherwise, the Insured has been classified as a 'smoker.' "


_David H. McMahon_

Secretary


Form No. 9186



**First Colony Life Insurance Company**
A GE Financial Assurance Company

Home Office
700 Main Street
Lynchburg, VA 24504

## ACCIDENTAL DEATH BENEFIT RIDER

**BENEFIT**

The Company will pay the Beneficiary the accidental death benefit in effect on the date of the Insured's accidental death. Payment will be made after the following have been received at the home office:

- this Rider;
- proof satisfactory to the Company of the Insured's accidental death as defined in this Rider; and
- any other claim or authorization forms as specified in the first paragraph on the face page of the Policy.

The Initial Accidental Death Benefit is shown in the Policy Schedule, which is referred to as the Schedule.

The Annual Report for the Policy will include the amount of the accidental death benefit.

**CHANGE IN THE ACCIDENTAL DEATH BENEFIT**

The accidental death benefit will automatically be decreased if:

- the specified amount of the Policy is decreased at the Owner's request; and
- the accidental death benefit as of the effective date of the decrease in specified amount would exceed the death benefit under the Policy as of such date.

In such a case, the accidental death benefit will be decreased on the effective date of the decrease in specified amount to an amount equal to the death benefit under the Policy on such date.

The Owner may request a decrease in the accidental death benefit. Written request for the decrease must be received at the home office in a form acceptable to the Company. The effective date of such a decrease will be the beginning of the policy month following Company approval.

**CONSIDERATION**

The consideration for this Rider is:

- the application for this Rider; and
- deduction of the cost of this Rider from the value under the Policy.

A copy of such application was attached at issue of this Rider. The cost for this Rider is explained in the Schedule. It is deducted in the same manner and on the same dates as the cost of insurance for the Policy. Deductions for the cost of this Rider cease when this Rider terminates.

**DEFINITION OF ACCIDENTAL DEATH**

Accidental death means death which:

- results directly from accidental bodily injury sustained while this Rider is in force;
- occurs within 90 days after the date of such accidental bodily injury; and
- occurs while this Rider is in force.

**RISKS NOT COVERED**

The Company will not pay the accidental death benefit if the Insured's death is a result of:

- any bodily or mental disease or sickness;
- medical or surgical treatment for bodily or mental disease or sickness;
- bacterial infection except infection resulting from accidental bodily injury;
- intentionally self-inflicted injury, while sane or insane;
- the Insured's commission of, or attempt to commit, an assault or felony;
- participation in a riot or insurrection;
- war, declared or undeclared, or any act of war;
- travel or flight in any aircraft, unless the Insured is a fare-paying passenger on a scheduled commercial passenger flight;
- any intoxicant or drug taken, absorbed, or inhaled unless such drug was used on the advice of a licensed physician and in the dosage prescribed;
- any gas voluntarily and intentionally taken, absorbed, or inhaled; or
- any poison voluntarily and intentionally taken, absorbed, or inhaled.

If the Insured's death is the result of any gas or poisonous food substance unintentionally taken, absorbed, or inhaled, the Company will pay the accidental death benefit.

**NOTICE AND PROOF OF CLAIM**

Written notice of claim and proof of the Insured's accidental death must be received at the home office within 90 days after the date of death. Failure to give notice and proof will not affect any claim if such notice and proof could not reasonably have been given sooner. The Company has the right and opportunity to examine the body of the Insured and, unless forbidden by law, to make an autopsy.

**GENERAL PROVISIONS**

This Rider is a part of the Policy to which it is attached. Policy provisions apply to this Rider except where modified by this Rider.

**MISSTATEMENT OF AGE**

If the Insured's age is misstated, the Company will adjust the amount of the accidental death benefit. It will be adjusted to the amount that the most recent cost of this Rider would have purchased based on the correct age. If the correct age at issue would have exceeded the maximum issue age for this Rider or if this Rider would have already terminated based on the correct age, the liability of the Company under this Rider will be an amount equal to the total cost of this Rider.

**TERMINATION**

This Rider will terminate:
- on the policy anniversary nearest the Insured's seventieth birthday;
- on the date of maturity or termination of the Policy; or
- at the beginning of the policy month after the Owner's written request is received at the home office.

Signed at the home office on the Rider Date of Issue. The Rider Date of Issue is the same as the Date of Issue of the Policy unless a different date is shown here. Rider Effective Date:

George R. Zippel
President

David H. McMahon
Secretary

(Page 3 of 3)

# APPLICATION TO FIRST COLONY LIFE INSURANCE COMPANY 2100851
P.O. Box 1280 Lynchburg, Virginia 24505-1280

Complete this application in dark ink. Please print all answers.

FEB 08 1995    Location INNSBRUCK
ADMINISTRATION

## GENERAL INFORMATION

Name of Employer: INLAND Group, Inc.    Location INNSBRUCK
Name of Employee (Last, First, MI): CIURA STEVEN    Soc. Sec. No. 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    Home Phone No. (708) 378-9077
Date of Employment: 11-10-86    Employee No.    Department No./Name: 09    Annual Base Salary: $25,000    Pay Frequency: 52 26 24 12 Other
Employee's Home Address: 640 W. BRIARCLIFF RD BOLINGBROOK IL 60440

## EMPLOYEE

Full Name of Proposed Insured Employee (Last, First, MI): CIURA STEVEN    Sex: M    Date of Birth: 12-12-53    State of Birth: IL    Height: 5 ft 3 in.    Weight: 180 lbs.
Amount of Insurance: $50,000    Plan of Insurance: FPP    Death Benefit Option: 2 Will be 1 unless 2 is checked.    Riders: WP CIR ADB Other
Modal Deduction (incl. riders): $18.34    Automatic Premium Loan: No    Occupation: MAintenance
Beneficiary: LISA VANDENBERGHE FIANCE 640 W. BriarcliffRd Bolingbrook IL 60440    Owner:

## SPOUSE

(blank)

## DEPENDENT CHILDREN

(blank)

COMPLETE IN ALL CASES. 5956

Form No. 504

Professional health care provider (care provider) includes, but is not limited to, physicians, chiropractors, physical therapists, psychologists, and drug, alcohol, or mental health counselors. Medical facility includes hospital, clinic, mental health facility, and drug or alcohol treatment or consultation facility.

Explain any "Yes" answers in the Remarks section.

| | Employee | | Spouse | | Children | |
|---|---|---|---|---|---|---|
| | Yes | No | Yes | No | Yes | No |
| 5. Has any Proposed Insured: | | | | | | |
| a. consulted with, received treatment from, or been advised to receive treatment from a care provider or medical facility for any reason during the past 5 years? | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| b. ever had, been told he or she had, or been treated for: | | | | | | |
| 1) cancer or any cancer related disease? | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 2) stroke, high blood pressure, or disease of the heart or blood vessels? | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 3) kidney disease or diabetes? | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 6. In the past 10 years, has a care provider or medical facility informed any Proposed Insured that he or she has HIV infection or treated him or her for such infection? | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

## REMARKS

| Question # | Proposed Insured's Name | Explanation: include diagnoses, dates, durations, names and addresses of care providers/medical facilities. |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

## AUTHORIZATION TO COLLECT AND DISCLOSE INFORMATION

Source   Each of the following may be a source of information: care provider; medical facility; insurer; reinsurer; MIB; consumer reporting agency; financial source; and employer.

Information   Information means facts about my: mental or physical health; other insurance coverage; hazardous activities; character; general reputation; mode of living; finances; vocation; and other personal traits.

If I was required to answer Questions 5 and 6 of the application, I understand that the following parties may need to collect information in regard to proposed coverage: First Colony Life Insurance Company (the Company) and its reinsurers; the Medical Information Bureau, Inc. (MIB); a consumer reporting agency. To collect and disclose and all persons authorized to represent these parties. I therefore authorize each source to give information when this Authorization to Collect and Disclose Information (Authorization) is presented. A copy of this Authorization will be as valid as the original. The Company will use the information to decide if I am insurable. The broker may use it to help update and improve my insurance program. Those parties that may need to collect information may disclose the information they collect to the following: other insurers to which I have applied or may apply; reinsurers; MIB; or those persons who perform business, professional, or insurance tasks for them. They may disclose the information as allowed by law. MIB and consumer reporting agencies may disclose the information only as set forth in a contract with a member company or organization.

This Authorization will be valid for two years after the Date of Application. I understand that I or my authorized representative may request to receive a copy of this Authorization.

These statements are made by each proposed insured. If minor children are proposed for coverage, these statements are made by the person authorized to act on their behalf.

The application includes this application and any forms designated by the Company to be part of the application. The term "broker" means the soliciting insurance agent/broker. No broker is authorized to: (a) make or modify contracts; (b) waive any rights or requirements of the Company; or (c) waive any information requested by the Company. By signing below, I apply to the Company for coverage as indicated in the application and represent that: (1) I have received a copy of the CONDITIONS PRECEDENT FOR PAYROLL DEDUCTION INSURANCE and the Notice to Proposed Insured(s); (2) I have read the CONDITIONS PRECEDENT FOR PAYROLL DEDUCTION INSURANCE and agree that insurance will begin on the Date of Application only as set forth in those CONDITIONS PRECEDENT; and (3) the statements and answers I have given about me or about others proposed for coverage are true, complete, and correctly recorded to the best of my knowledge and belief. I understand that I am authorizing the collection and release of information as noted in the AUTHORIZATION TO COLLECT AND DISCLOSE INFORMATION only if Questions 5 and 6 of the application must be answered.

Signed at _Bolingbrook_     _IL_     Date of Application _2 3 9_
         City                State                    Month  Day  Year

X _Steven Cain_
                                              Employee's Signature

## BROKER'S STATEMENT

Is any insurance intended to replace, end, or change, or likely to replace, end, or change, any existing life insurance or annuities? ☐ Yes   No ☐
Any required replacement forms were given on or before the Date of Application.

X _____
Licensed Broker (Required if required)

X _____
                         Spouse's Signature (if required)

X _____
                         Owner (if other than Employee)

X _____
                         Children's Signature (if required)



LYNCHBURG, VIRGINIA

## CONSUMER NOTICE

Should you have any questions, please address your inquiry to:

First Colony Life Insurance Company    and/or    State of Illinois
Policyholders' Services Department                      Department of Insurance
P. O. Box 1280                                         320 West Washington Street
Lynchburg, Virginia 24505                    Springfield, Illinois 62767
                                                       ATTENTION: Consumer Services Section