UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENWORTH LIFE AND ANNUITY INSURANCE COMPANY (f/k/a FIRST COLONY LIFE INSURANCE COMPANY), <br><br> Plaintiffs, <br><br> v. <br><br> DOROTHY CIURA and LISA VANDENBERGHE (n/k/a Lisa Ortega), <br><br> Defendants. <br>----------------------------------------------------------<br> LISA VANDENBERGHE (n/k/a Lisa Ortega), <br><br> Cross-Plaintiff, <br><br> v. <br><br> DOROTHY CIURA, <br><br> Cross-Defendant | No. 07 CV 06400 <br> Honorable Samuel Der-Yeghiayan <br> Magistrate Judge Michael Mason |

**MEMORANDUM IN SUPPORT OF DEFENDANT/CROSS-PLAINTIFF
VANDENBERGHE'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Defendant/Cross-Plaintiff, LISA VANDENBERGHE, ("VANDENBERGHE") was the originally named beneficiary of a life insurance policy issued to Steven Ciura ("the Insured") and the sole named beneficiary at the time of the Insured's death. Any claim to any portion of the life insurance proceeds by Cross-Defendant CIURA, ("CIURA") are completely bereft of any basis in both law and fact. There is no admissible evidence that the Insured ever intended to change the beneficiary and there was no substantial compliance with the terms of the policy in order to effectuate any change of beneficiary. Pursuant to Illinois law, as set forth below, there is no genuine issue of material fact and only one conclusion can be made when applying the facts

1

to the law in this case – that VANDENBERGHE is entitled to the entire insurance proceeds from the life insurance policy, currently being held by the Clerk of the Court.

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party establishes through the record and declarations that there exists no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met its burden, the nonmoving party must set forth specific facts showing there exists a genuine issue for trial. Silk v. City of Chicago, 194 F.3d 788, 798 (7th Cir. 1999). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Insolia v. Philip Morris, 216 F.3d 596, 599 (7th Cir. 2000).

## II.  APPLICABLE STATE LAW

All parties allege no federal causes of actions in any of their pleadings. This court's federal question jurisdiction stems soley from the parties' diversity. "A federal court applies state law when it decides an issue not addressed by federal law, regardless of the source from which the cause of action is deemed to have arisen for the purpose of establishing federal jurisdiction." Hollus v. Amtrak Northeast Corridor, 937 F. Supp. 1110, 1114 (D.N.J. 1996) citing A.I. Trade Finance, Inc. v. Petra Int'l Banking Corp., 314 U.S. App. D.C. 122, 62 F.3d 1454, 1463 (D.C. Cir. 1995).  As there is no federal common law, (see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 82 L. Ed. 1188, 58 S. Ct. 817 (1938)), for the purposes of the instant motion and all claims presented, this court should apply Illinois contractual and common law.

**III. UNDER ILLINOIS LAW, IN ORDER TO HAVE AN EFFECTIVE CHANGE IN BENEFICIARY THE DECEDENT MUST SUBSTANTIALLY COMPLY WITH THE TERMS SET FORTH BY THE INSURANCE POLICY, WHICH DID NOT HAPPEN IN THIS CASE**

Because the Insured made no effort to comply with the terms of the life insurance policy, let alone substantial compliance with the terms of the policy, the originally named beneficiary, VANDENBERGHE, is the sole and proper beneficiary of the entire life insurance proceeds. As a general rule, when a policy prescribes a method for changing beneficiaries, that method is exclusive and a change by any other means is ineffectual. Kniffin v. Kniffin, 119 Ill.App.3d 106, 456 N.E.2d 659 (1st Dist. 1983). The law is clear, that some positive action must be taken by the insured to comply with the terms of the policy in regard to changing beneficiaries. Substantial compliance with the terms of the policy has been deemed essential. Dooley v. James A. Dooley Associates Employees Retirement Plan, 92 Ill.2d 476, 486, 442 N.E.2d 222, 227 (1982)

In Dooley, the Illinois Supreme Court made it clear that certainty of intent alone is not sufficient to accomplish a change of beneficiary; there must be a combination of intent to make the change and positive action towards that end. Id. The Court went on to define substantial compliance as follows:

> "Substantial compliance requires (a) a clear expression of the insured's intention to change beneficiaries, plus (b) his concrete attempt to carry out his intention as far as was reasonably in his power. Intent alone is not sufficient. In addition, the insured must have done all he reasonably could do under the circumstances to carry his intention into execution." Id. citing 7 Williston, Contracts sec. 916, at 484-85 (3d ed. 1963).

In Kniffin, the insured originally named his parents as beneficiaries of his life insurance proceeds. Upon the insured's death, the insured's wife brought suit against the insured's father claiming entitlement to the proceeds of the life insurance policy. The appellate court granted the insured's father's motion for summary judgment. The court held that the insured's wife was not entitled to payment of proceeds of life insurance policy where the insured originally named his parents as beneficiaries and never filed written notice of a change of beneficiary, and that the

insured's signing of a designation of beneficiary form from another insurance company did not constitute substantial compliance with policy provision establishing a method for changing a beneficiary designation.  Kniffin, 119 Ill.App.3d at 111-112, 456 N.E.2d at 663.

In the case at bar, VANDENBERGHE was the originally named beneficiary of the life insurance policy at issue (hereinafter "the Policy") and the sole named beneficiary of the Policy at the time of the Insured's death.  The method for changing the beneficiary designation is set forth in Part A of the life insurance policy by a paragraph entitled "CHANGE OF OWNER AND BENEFICIARY", which stipulates:

> "The Owner may change the designation of Owner and Beneficiary during the Insured's lifetime.  Any change is subject to the consent of an irrevocable beneficiary.  Written notice of change must be filed at the home office in a form acceptable to the Company.  The new designation will then take effect as of the date the Owner signed the notice.  Such a change does not affect any payment made or other action taken by the Company before the notice is received."  (See Exhibit 5, Affidavit of Kimberly Hudson with attached Exhibit A)

Clearly, the insured in the present case failed to substantially comply with the above policy provision.  CIURA has failed to provide any evidence to support (a) a clear expression of the Insured's intention to change beneficiaries, *plus* (b) the Insured's concrete attempt to carry out his intention as far as was reasonably in his power (i.e. positive action).  The pleadings disclose that the Insured never filed written notice of a change of beneficiary, nor did he file his certificate with Genworth Life f/k/a First Colony (hereinafter "GLAIC") as required by the Policy.  In fact, according to the sworn affidavit of Kimberly Hudson, a GLAIC employee and leader of the investigative team of the life claims department, GLAIC'S records contained no indication that the insured ever made a request to change the beneficiary under the policy since its origination, in any form.  There is no claim made that the Insured made or attempted to make any effort to comply with the Policy requirements or that he even contacted GLAIC for the purpose of changing beneficiaries. No allegations set forth in CIURA'S pleadings even claim that the Insured made a written notice of any kind, let alone on a "form acceptable to the

4

company." In fact, the record is devoid of any evidence that the Insured took any substantial action to change the beneficiary of the Policy in dispute. Furthermore, any claims by CIURA of any oral statements allegedly made by the Insured are ineffectual to change beneficiaries and do not constitute substantial compliance. See e.g. Tatelman v. Tatelman, 25 Ill.App.3d 678, 323 N.E.2d 821 (1st Dist. 1975), cert. denied, 58 Ill.2d 599 (1975)(an oral declaration that a beneficiary has been changed or will be changed is not sufficient to effect the change). Therefore, the Defendant/Cross-Plaintiff, LISA VANDENBERGHE'S motion for summary judgment should be granted in its entirety against Cross-Defendant DOROTHY CIURA.

**IV.    EQUITABLE RELIEF IS NOT WARRANTED UNDER THE FACTS OF THIS CASE AS A MATTER OF LAW**

The law is clear, that some positive action must be taken by the insured to comply with the terms of the policy in regard to changing beneficiaries to warrant the intervention of a court of equity. Substantial compliance with the terms of the policy has been deemed essential. An oral declaration that a beneficiary has been changed or will be changed is not sufficient to effect the change. Tatelman v. Tatelman, 25 Ill.App.3d 678, 323 N.E.2d 821 (1st Dist. 1975), cert. denied, 58 Ill.2d 599 (1975). To warrant the intervention of equity, Illinois law requires that some positive action be taken by the insured to comply with the terms of the policy; "substantial compliance" with the policy terms is the test. Kniffin v. Kniffin, 119 Ill.App.3d 106, 456 N.E.2d 659 (1st Dist. 1983).

In Tatelman, the mother of the deceased insured filed suit against the deceased's wife, who was named as beneficiary at the time of death. Plaintiff's complaint alleged that the decedent and his wife were estranged and the wife was insistent upon obtaining a divorce; that the wife no longer 'had a place in his affections and because of the intense hatred and lack of love and affection Brenda had for Irwin, it was no longer Irwin's intention to continue to name Brenda as his beneficiary under the said policies of insurance,' and the decedent's true intent was

to change the name of the beneficiary to his mother, the plaintiff.  In a discovery deposition, the plaintiff testified that her son, in the presence of plaintiff's sister, told her that he was going to transfer his insurance making her beneficiary when he came back from Centralia and that he was going to transfer his insurance as soon as he came back.  The decedent had also talked about his coming divorce, that he was angry with his wife because she was having an affair with another man, that she told him about it and that the decedent 'hated (his wife's) guts.'  The decedent was killed in an automobile accident before returning from Centralia.  Plaintiff argued that a court of equity will intervene to carry out the intentions of a person under these circumstances.  Id., 25 Ill.App.3d at 679-680, 323 N.E.2d at 822-823.  In entering summary judgment against the plaintiff, the Court emphasized that in favor of the wife and against the mother, the court held that an oral declaration that a beneficiary has been changed or will be changed is not sufficient to effect the change.  Id., 25 Ill.App.3d at 680, 323 N.E.2d at 823.  Given the fact that there was no claim by the plaintiff that the deceased made or attempted to make any effort to comply with the policy requirements or that he contacted the companies for the purpose of changing beneficiaries, "it is evident that there exists no genuine issue as to any material fact, and…it is emphatically clear that the defendant, was entitled to judgment as a matter of law." Id., 25 Ill.App.3d at 684, 323 N.E.2d at 826.

Just as in Tatelman, this court is presented with very similar facts, requiring the same result.  The Insured did not make any effort to comply with the policy requirements or even contact GLAIC for the purpose of changing beneficiaries.  Now his mother, CIURA, conveniently claims that her son told her he intended to change beneficiaries and casts aspersions upon plaintiff.  As set forth in Tatelman, these alleged oral statements are not enough to prevail or warrant any court in equity to grant relief.  Without substantial compliance with the terms of the GLAIC insurance policy by the Insured, this court, as a matter of law, has no choice but to

6

award the entire life insurance proceeds to the named beneficiary at the time of decedent's death, that being the Cross-Plaintiff, LISA VANDENBERGHE.

V.   **ILLINOIS' DEAD MAN'S ACT PREVENTS DEFENDANT FROM PRSENTING ANY EVIDENCE REGARDING DECEDENT'S CONVERSATIONS WITH HER**

Because CIURA is directly interested in this action, she will barred from testifying on her own behalf to conversations with the decedent or events which took place in the decedent's presence pursuant to Illinois' Dead Man's Act. Illinois' Dead Man's Act, in pertinent part, states as follows:

> "§ 8-201. Dead-Man's Act. In the trial of any action in which any party sues or defends as the representative of a deceased person or person under a legal disability, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased…"
>
> As used in this Section: ….
>
> (b) "Representative" means any executor, administrator, heir or legatee of a deceased person and any guardian or trustee of any such heir or legatee, or a guardian or guardian ad litem for a person under legal disability…"
>
> 735 ILCS 5/8-201

CIURA has alleged in her pleadings that the decedent made certain statements to her allegedly setting forth his intent as to his desired beneficiary. CIURA further claims that because she is the decedent's heir at the time of his death, that she is entitled to the insurance proceeds. CIURA clearly has an interest in this action by attempting to inherit over $50,000.00 in life insurance proceeds. Based solely on her alleged conversations with the decedent, she attempts to prove that she is entitled to this money "in the interests of justice." (See Exhibit 4, Ciura's Answer to Cross Claim and Affirmative Defenses, ¶13 of 2nd Affirmative Defense) However, this one-sided, self-serving testimony is exactly what the Dead Man's Act was enacted to prevent. The purpose of the Dead

7

Man's Act is to prevent introduction of testimony concerning events or conversations which only a decedent might have been able to contradict. <u>Goad v. Evans</u>, 191 Ill.App.3d 283, 300, 547 N.E.2d 690, 701 (4th Dist. 1989).

Furthermore, the public policy rational behind the Illinois courts requiring the decedent to substantially comply with the terms of a life insurance policy regarding changing beneficiaries is to prevent this exact scenario – preventing a person from unilaterally claiming to be entitled to money with no documented evidence to corroborate that claim once a person dies. Requiring that the evidence establish an unequivocal intent on the insured's part *and* that he take positive action to change his beneficiary serves two purposes: doubt as to the intent is eliminated and concrete evidence of that intent is provided the payor. <u>John Alden Life Ins. Co. v. Propp</u>, 255 Ill.App.3d 1005, 1010, 627 N.E.2d 703, 706 (2nd Dist. 1994)(citing <u>Dooley</u>, 92 Ill.2d at 486, 442 N.E.2d at 227)(emphasis added). "In 5 Couch on Insurance section 28:72, at 175 (2d ed. 1960), it is stated that compliance must be '**sufficient to give assurance of the authenticity of the insured's desire to bring about a change and to provide trustworthy evidence of that desire to the insurer.'** <u>Id.</u>

In this case, the Dead Man's Act bars CIURA from testifying to the self-serving allegations contained in her affirmative defenses. An interested party's blanket allegations, without any positive action by the decedent, is not sufficient to give assurance of the insured's desire to change the beneficiary nor does it provide trustworthy evidence. Just as the court ruled in <u>Alden</u> and in <u>Tatelman</u> discussed *infra*, it is evident that in this case, there exists no genuine issue as to any material fact and it is emphatically clear that summary judgment should be granted in favor of the Cross-Plaintiff, LISA VANDENBERGHE.

WHEREFORE the Defendant/Cross-Plaintiff, LISA VANDENBERGHE (n/k/a LISA ORTEGA), prays this Honorable Court enter summary judgment, pursuant to FRCP 56(a), on

her Cross-Complaint against Cross-Defendant DOROTHY CIURA and on any affirmative defenses filed by CIURA, and enter an order or orders granting the following relief:

  A. Granting judgment in favor of VANDENBERGHE for the full amount of any and all insurance proceeds and interest due and owing;

  B. That any and all insurance proceeds and interest due and owing under the Policy, held by the Clerk of the Court pursuant to GLAIC'S Complaint for Interpleader, be hereby ordered to be tendered to VANDENBERGHE immediately;

  C. Granting judgment against Defendant, DOROTHY CIURA, pertaining to any and all claimed rights by her to any portion of the insurance proceeds and interest due and owing by GLAIC under the Policy as set forth above;

  D. Awarding VANDENBERGHE her actual court costs incurred in prosecuting this Cross-Claim against Defendant, DOROTHY CIURA;

  E. Granting VANDENBERGHE such further and other relief as this Court may deem appropriate.

              Respectfully submitted,

              Attorney for Lisa Vandenberghe
              (n/k/a Lisa Ortega)

              /s/ Mark W. Mathys
              Mark W. Mathys

Mark W. Mathys
Law Office of Mathys & Schneid
1730 Park Street, Suite 224
Naperville, IL 60563
(630)428-4040
(630)428-0044 Fax
ARDC No. 6217305

**CERTIFICATE OF SERVICE**

   The undersigned hereby certifies that on July 24, 2008, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Attorneys for GLAIC
William A. Chittenden, III wchittenden@cmn-law.com , acruz@cmn-law.com
Stuart F Primack sprimack@cmn-law.com , acruz@cmn-law.com


I the undersigned, an attorney, also served the above documents to the following individuals by mailing a copy to the above-named attorney(s) at the above address and depositing the same in the U.S. Mail before 4:00 p.m. at 1730 Park Street, Naperville, Illinois, on July 24, 2008, with proper postage prepaid:

Attorney for Dorothy Ciura
Craig Greenwood
4456 Seeley Avenue
Downer Grove, IL 60515


             /s/ Mark W. Mathys

             Mark W. Mathys

             Attorney for Lisa Vandenberghe
             (n/k/a Lisa Ortega)

Mark W. Mathys
Law Office of Mathys & Schneid
1730 Park Street, Suite 224
Naperville, IL 60563
(630)428-4040
(630)428-0044 Fax
ARDC No. 6217305