IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA VANDENBERGHE (n/k/a/ LISA ORTEGA), | ) ) ) |
| Cross-Plaintiff, | ) ) |
| v. | ) No. 07 C 6400 ) |
| DOROTHY CIURA, | ) ) |
| Cross-Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Cross-Claimant Lisa Vandenberghe's ("Vandenberghe") motion for summary judgment and motion to strike. For the reasons stated below, we deny the motion for summary judgment and deny the motion to strike as moot.

## BACKGROUND

Steven Ciura was allegedly the owner of a life insurance policy ("Policy") issued by Genworth Life and Annuity Insurance Company ("Genworth"). Steven Ciura allegedly died on July 23, 2003, and Genworth became obligated to pay the beneficiary of the Policy $50,000. On the date of Steven Ciura's death,

1

Vandenberghe, now known as Lisa Ortega, was allegedly the sole named beneficiary of the Policy.  After the death of Steven Ciura, Cross-Claimant Dorothy Ciura, Steven Ciura's mother, allegedly mailed an "executed Proof of Loss of Claimant's Statement" to Genworth making a claim to the proceeds of the Policy.  (Compl. Par. 8).  On May 5, 2006, Dorothy Ciura allegedly brought an action in Illinois state court to recover the proceeds of the Policy.  Genworth subsequently brought the instant action for interpleader pursuant to 28 U.S.C. § 1335.  On November 20, 2007, we granted Genworth's motion for leave to deposit its admitted liability and Genworth was released from this action.  Vandenberghe and Dorothy Ciura subsequently filed an answer to Genworth's complaint in this action and Vandenberghe filed a cross claim against Dorothy Ciura.  Vandenberghe now moves for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

**DISCUSSION**

I. Controlling Law

Vandenberghe argues that the dispute in the instant action is governed by Illinois state law. (SJ Mem. 2). Vandenberghe argues that there is no federal common law that addresses the issues in this case and, thus, the court must apply the Illinois state law doctrine of substantial compliance. However, in *Metropolitan Life Ins. Co. v. Johnson*, 297 F.3d 558 (7th Cir. 2002), the Seventh Circuit recognized that there is a federal common law doctrine of substantial compliance. *See id.* at 566-68 (applying doctrine in ERISA context). Thus, we will apply federal law in the instant action. We also note, however, as the court noted in *Johnson*, that the Illinois doctrine of substantial compliance and the federal common law doctrine are extremely similar, and, as in *Johnson*, in this case, regardless of which law is applied, the ultimate result would be the same. *Id.* at 567.

II. Change of Beneficiary

Vandenberghe argues that she was listed as the sole beneficiary on the Policy and there is not sufficient evidence indicating that Steven Ciura ever removed her as the sole beneficiary. Under the federal common law, an insured is deemed to have changed the beneficiary for the policy if the "insured 'evidence[d] his or her intent'

4

and 'attempt[ed] to effectuate the change by undertaking positive actions.'" *Johnson*, 297 F.3d at 567 (quoting in part *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 564 (4th Cir. 1994)). In order to show substantial compliance in regard to a change of beneficiary, there must be a showing that the insured "substantially complied" with the requirement in the policy for changing the beneficiary. *Id.* ; *see also Rendleman v. Metropolitan Life Ins. Co.*, 937 F.2d 1292, 1297 (7th Cir. 1991)(stating that courts require "more concrete evidence of intent"); *Dooley v. James A. Dooley Assoc's Employees Retirement Plan*, 442 N.E.2d 222, 227 (1982)(stating that for substantial compliance, "[t]here must be a combination of intent to make the change and positive action towards effecting that end"); *Kniffin v. Kniffin*, 456 N.E.2d 659, 661 (Ill. App. Ct. 1983)(stating that "when an insured has done everything in his power to effectuate a change of beneficiary, equity will not require exact compliance with the conditions prescribed in the policy").

### A. Beneficiary Listed On Policy

Vandenberghe argues that it is undisputed that at the time of Steven Ciura's death the Policy listed Vandenberghe as the sole beneficiary. (SF Par. 8). Dorothy Ciura contends that the fact is disputed, arguing that "Lisa Vandenberghe fiancé" is listed as the beneficiary. (R SF Par. 8). However, Dorothy Ciura offers no evidence

5

that would indicate that the "Lisa Vandenberghe fiancé" referenced in the Policy is not Vandenberghe, the Cross-Claimant in the instant action. In addition, the Policy, which is an exhibit attached to the complaint, clearly lists Lisa Vandenberghe as the beneficiary and separately off to the right merely indicates that she was Steven Ciura's fiancé. (Exhibit 1). Dorothy Ciura has not pointed to any evidence that shows that she was ever listed as a beneficiary on the Policy. Therefore, pursuant to Local Rule 56.1, it is undisputed that at the time of Steven Ciura's death the Policy listed Vandenberghe as the sole beneficiary.

### B. Intent to Change Beneficiary

Vandenberghe argues that there is not sufficient evidence that shows that Steven Ciura substantially complied with the requirements in the Policy for changing the beneficiary in the Policy. Dorothy Ciura argues that Steven Ciura clearly intended for Dorothy Ciura, his mother to get the proceeds of the Policy. Dorothy Ciura contends that Vandenberghe "bitterly broke up with" Steven Ciura and married another man three years before Steven Ciura's death. (Ans. 2). Dorothy Ciura claims that Steven Ciura was unable to formally execute a change of the beneficiary in the policy since he was bedridden due to cancer and a stroke. Dorothy Ciura also claims that, near the end of his life, Steven Ciura could not remember where he left

6

the Policy or remember Genworth's name. Dorothy Ciura also claims that Steven Ciura told his nephew to find the Policy and to make sure that Dorothy Ciura was listed as the beneficiary. Dorothy Ciura, presents as evidence to support her claims affidavits indicating that individuals heard Steven Ciura make certain statements. Dorothy Ciura submits an affidavit from Conrad Heiberger ("Heiberger"), Dorothy Ciura's brother-in-law. Heiberger represents that he heard Steven Ciura say to Dorothy Ciura "Don't worry mom, I have insurance, you will be taken care of when I'm gone." (Hei. Aff. Par. 4). Dorothy Ciura also submits an affidavit from Patrick Burgette ("Burgette"), the nephew of Steven Ciura. Burgette indicates that Dorothy Ciura took care of Steven Ciura the whole time that he was sick and that Steven Ciura died in bed with his mother at his side. (Burg. Aff. Par. 7, 13). Burgette also indicates that Steven Ciura told him to make sure that Vandenberghe was not listed as a beneficiary on the Policy and that he wanted "everything to go to his mother." (Burg. Aff. Par. 9).

    1. Bias of Witnesses

Vandenberghe argues that such sources are clearly "biased" sources since they are related to Dorothy Ciura and they cannot be trusted. (Reply 3). However, Vandenberghe is improperly seeking to have the court make credibility

7

determinations regarding the affiants' statements. Such determinations cannot be made at the summary judgment stage and must be made by the trier of fact at trial. *See Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007)(stating that "'[o]n summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder'")(quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)). The parties can argue at the trial on the credibility of the witnesses and the trier of fact can accordingly assess their credibility. Thus, the affidavits are not inadmissible due to bias.

### 2. Foundation For Affidavits

Vandenberghe also argues that the affidavits are inadmissible due to the lack of foundation. We disagree that the affidavits have failed to indicate a proper foundation for the statements. Heiberger indicates in his affidavit that he visited with Steven Ciura, while he was ill and dying and during the visit he had the opportunity to hear Steven Ciura's statement to his mother. (Hei. Aff. Par. 2-5). Nothing more is required at the summary judgment stage. Dorothy Ciura is not required to provide every specific detail in the form of testimony at this juncture establishing a foundation for such statements as at trial. Similarly, Burgette claims that he visited

Steven Ciura shortly before his death and that is when Steven Ciura made the statements to Burgette. (Burg. Aff. Par. 8-9). Thus, Dorothy Ciura has presented a sufficient foundation for the admission of the affidavits.

### 3. Hearsay

Vandenberghe also argues that the affidavits are inadmissible since they contain hearsay. Vandenberghe, however, fails to specify which portions of the affidavits she deems to be hearsay and provide any detailed argument explaining why the portions are hearsay. Vandenberghe also fails to address whether any hearsay exceptions would be applicable. We cannot find at the instant juncture, based on the record before us that the affidavits must be barred as inadmissible hearsay. Vandenberghe can raise objections on a case-by case basis at trial. Thus, there are genuinely disputed facts concerning Steven Ciura's intentions to change the beneficiary on the Policy.

## III. Efforts to Comply

Vandenberghe also argues that even if the affidavits are admitted, there is not sufficient evidence that shows that Steven Ciura took even minimal steps towards changing the beneficiary on the Policy. However, Dorothy Ciura has put forth

9

evidence indicating that Steven Ciura became extremely ill with cancer and then had a stroke that severely restricted his actions. Dorothy Ciura also has put forth evidence indicating that Steven Ciura became bedridden and his illness made it extremely difficult for him to locate his copy of the Policy and take even the initial steps towards changing the beneficiary on the Policy. Vandenberghe contends that Steven Ciura could and should have made more of an effort to contact Genworth. However, whether Steven Ciura was capable of certain actions is a factual issue that needs to be addressed by the trier of fact. *Washington*, 481 F.3d at 550. Therefore, based on the above, we deny Vandenberghe's motion for summary judgment.

IV. Motion to Strike

Vandenberghe has also moved to strike the affidavits presented by Dorothy Ciura, portions of Dorothy Ciura's responses to Vandenberghe's statement of material facts, and Dorothy Ciura's statement of additional facts. For the reasons stated above, we cannot find at this juncture that the affidavits are inadmissible. In regards to Vandenberghe's objections to Dorothy Ciura's responses to Vandenberghe's statement of material facts and Dorothy Ciura's statement of additional facts, even if they were stricken, the ultimate ruling on Vandenberghe's motion for summary judgment would remain the same. Therefore, we deny the

motion to strike as moot.

## CONCLUSION

Based on the foregoing analysis, we deny Vandenberghe's motion for summary judgment and deny the motion to strike as moot.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: November 25, 2008